## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ERNEST F. MITCHELL**,

                Plaintiff,

           v.                                Case No. 1:23-cv-3775 (TNM)

**CARLOS DEL TORO**,

                Defendant.

## <u>MEMORANDUM OPINION</u>

LT Ernest Mitchell asks the Court to retroactively promote him to the naval rank he thinks he deserves. The Secretary of the Navy denied his promotion after he was disciplined for failing to meet standards of conduct. Mitchell also insists that his superiors wrongly disciplined him and took too long to do it, so any evidence from the record detailing their criticism should be expunged.

This Court disagrees with Mitchell on all points. First, his retroactive promotion request is not justiciable. Second, the Navy's decisions about his military record can be corrected only for the "most egregious" errors. The governing statutes and the D.C. Circuit's precedent establish the motivating principle: "This [Court's] deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). Under this standard, he is entitled to no relief, so the Court will grant summary judgment to the Secretary.

**I.**

LT Mitchell has been in the U.S. Navy for nearly fifteen years.  AR 0060–61.  For much of that time, he successfully performed his duties.  He earned recommendations for early promotion five times, AR 0090–99, and received three Navy Commendation medals and three Navy Achievement medals, AR 0112–14, 0348–49, 0379, 0502, 0525.  In 2019, just before the incident spurring this case, Mitchell's fitness evaluation concluded that he met standards in five of seven categories.  AR 0108–09.  The other two categories included an "above standards" rating and a "progressing" rating that was below "meet[ing] standards" but avoided the lowest ranking.  *Id*.  After this fitness report, the Secretary of the Navy placed Mitchell's name on the promotion list.  AR 0182–83.

About a month later, in December 2019, Mitchell became the Command Duty Officer aboard the USS *Howard*, moored in San Diego.  AR 0240.  He arrived on December 11th with orders to prepare the destroyer for departure the next day.  Pl.'s Cross. Mot. Summ. J., ECF 16-1 at 7.  He was the skipper's "direct representative on board" responsible for responding to any last-minute malfunctions.  AR 0240.  Shortly after arriving, he realized that the ship was departing from Pier 12 but it would return to Pier 3, two-and-a-half miles away, at 4:00 p.m. on December 16th.  AR 0004, 0057, 0236.  Unfortunately, he had parked his car near the ship as he boarded at Pier 12; he estimates that he would have had to walk 45 minutes upon return to retrieve his vehicle.  AR 0057.  Walking back to his car, he says, would have caused him to miss his flight to take his fiancé to meet his family for the first time over the holidays.  AR 0070.

Mitchell decided to move his car.  AR 0057–58.  He told other members of the crew, his Section Leader, and the Officer of the Deck on the quarterdeck where he was going and why.  *Id.*; AR 0237.  A Section Leader who had missed dinner asked him to pick up food for him from

McDonald's on the way back.  AR 0237.  Mitchell told no one in his chain-of-command or the destroyer's commanding officer that he was stepping out.  AR 0004, 0239.  Nor did he transfer his Command Duty Officer responsibilities to anyone before leaving.  *Id.*

Mitchell asked a junior sailor to drive him to Pier 3 using an official vehicle.  AR 0231. He says that taxis are not allowed on the naval station and that there are no loaner bicycles.  AR 0058, 0237.  On the way back from the Pier, the sailor explained that he could not use the drive-through at McDonald's with a government vehicle because of the governing regulations.  AR 0231.  So the sailor parked beside the restaurant while Mitchell walked in for the burger.  *Id.* The two then returned to the ship.  *Id.*  He was gone somewhere between 15 and 60 minutes.  AR 0248.  He did not attempt to hide his absence.  AR 0237.

About a month later, Mitchell received notice that his scheduled promotion for 2020 had been delayed while the Secretary reviewed the December 11th incident.  AR 0004.  After the review, Mitchell received "nonjudicial punishment" for violating Articles 86, 92, and 133 of the Uniform Code of Military Justice, which forbid, respectively, wrongfully leaving one's post, failure to obey a lawful general order by wrongfully using a government vehicle for non-official business, and conduct unbecoming of an officer for ordering a junior sailor to perform a personal errand.  AR 0224, 0231.  He also received a punitive letter of reprimand.  AR 0231–35.  Mitchell appealed the decision; he admitted guilt to the offense conduct but denied criminal intent and disputed the punishment's proportionality.  AR 0240–42, 0248–49.  His commanding officer recommended denying the appeal and headquarters declined to rescind the punishment or downgrade it.  AR 0005, 0007–08, 0248–49.  The commander described Mitchell's conduct as "incredibly selfish, shortsighted, and not in line with the expectations of a Naval Officer of any rank, but especially a senior Department Head about to be promoted to Lieutenant Commander."

3

AR 0240.  He also objected to Mitchell's "gross misuse of power" in commanding a junior sailor to violate Department of Defense regulations, putting him in what the commander called an "extremely challenging position."  AR 0240–41.

But that was not all.  About six months later, the *Howard*'s skipper requested that Mitchell be detached for cause because of the incident.  AR 209–14, Pl.'s Cross Mot. Summ. J. at 10.  Detachment for cause "administrative[ly] remov[es] an officer . . . from the officer's current duty assignment before their normal transfer or planned rotation date."  AR 0168.  The action "is one of the strongest administrative measures used in the case of officers" and it portends a "serious effect on the officer's future naval career."  *Id.*  The Naval Military Personnel Manual, or "MILPERSMAN," allows detachment for cause for several reasons.  AR 0169–70.

The parties agree that the commander requested Mitchell's detachment based on Sections 1611-020(3)(b) and (c).  AR 0209–14; Def.'s Mot. Summ. J., ECF 13-1 at 3–4; Pl.'s Cross Mot. Summ. J. at 10–11.  Section (b) proscribes "[s]ubstandard performance involving one or more significant events resulting from gross negligence or complete disregard of duty."  AR 0160–70.  Section (c) prohibits "[s]ubstandard performance of duty over an extended period of time."  *Id.* at 0170.

The commander's detachment request described the December 11, 2019, events and enumerated three pages of Mitchell's other failures that constituted "[s]ubstandard performance of duty over an extended period of time" between November 2018 and January 2020.  AR 0211–14.  He did not recommend requiring Mitchell to show cause why he should remain in the Navy because he thought that he could "learn from these events and provide value" in a "different community."  AR 0214.  Other officers in Mitchell's chain of command endorsed the skipper's

recommendations, even after reading Mitchell's responsive memorandum.  AR 0009.  The Deputy Chief of Naval Personnel approved the detachment.  AR 0167.

Still, the Navy convened a Board of Inquiry to review the incident to determine whether Mitchell should remain in the Navy.  AR 0074.  It made two findings.  First, it unanimously found by a preponderance of the evidence that Mitchell had violated two articles of the Uniform Code of Military Justice: Article 92 for failure to obey an order, and Article 133 for conduct unbecoming of an officer.  *Id*.  Second, it decided that separating Mitchell from the Navy was unwarranted, despite his misconduct.  *Id.*; *see also* SECNAVINST 1920.6D, Encl. 11 ¶ 13(a)(3) (stating that the preponderance of the evidence standard only applies to the question whether the alleged misconduct occurred, not to the separation decision).

After Mitchell learned that he could remain in the Navy, he began pursuing his long-suspended promotion.  In January 2021, he asked the Secretary to lift the pause on his promotion to Lieutenant Commander and to render that promotion retroactive to his originally scheduled date of August 2020.  AR 0069–73.  In response, the Secretary removed his name from the promotion list.  AR 0012.  That removal occurred on April 26, 2022, more than 18 months after his promotion had been delayed.  *Id.*

Shortly afterward, Mitchell applied to the Board for Correction of Naval Records ("Correction Board") requesting: (1) removal from his record of both his fitness report from the 2020–2021 period and all detachment-for-cause reports from the *Howard*; and (2) promotion retroactively effective to August 2020.  AR 0048–61.[1]  Among other things, he argued that the Navy had unlawfully delayed his promotion beyond the strictures of 10 U.S.C. § 624(d)(5):  "An

---

[1] Mitchell also alleged that he had not been properly notified of his promotion delay, but he does not raise this issue now.  Pl.'s Cross Mot. Summ. J., ECF No. 15 *passim*.

appointment of an officer may not be delayed under this subsection for . . . more than 18 months after the date on which such officer would otherwise have been appointed." AR 0050.

The Correction Board rejected his claims on all counts. AR 0002–18. First, it found that Mitchell admitted to the December 11th offense conduct. AR 0014–18. Second, it found that the detachment for cause was warranted. *Id.* Third, it agreed that Mitchell's performance had been substandard for some time, as his commander said. *Id.* Fourth, though it agreed that Mitchell's promotion had been unduly delayed, the Board concluded that he still had not been promoted by operation of law because the Secretary had not found Mitchell qualified for the promotion, as required to effect the constitutional appointment process. *Id.* Finally, the Board thought that the case did not merit equitable relief because the delay "actually worked to Petitioner's favor," enabling him to "accrue more favorable material in his record for consideration" in future promotions. *Id.* The Secretary approved the Correction Board's recommendation. *Id.* at 0019.

Mitchell then sought relief from this Court claiming that the Correction Board's decision violated the Administrative Procedure Act. Compl., ECF No. 1. Both parties have moved for summary judgment. ECF Nos. 13–20. Their motions are ripe for consideration. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331. *See Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) (finding federal question jurisdiction for APA claims).

## II.

The parties debate at length whether the Court should engage in arbitrary-and-capricious review or substantial evidence review, though they agree that there will be little practical difference. Def.'s Mot. Summ. J. at 6–8; Pl.'s Cross Mot. Summ. J. at 19–20; Pl.'s Reply, ECF No. 19 at 9 n.2 ("To the extent that the Secretary is conceding that in their application to the

requirement of factual support the substantial evidence test and the arbitrary-and-capricious test are one and the same, LT Mitchell agrees.") (cleaned up).  The Court agrees with the Government that arbitrary-and-capricious review applies to all justiciable issues in the Corrections Board's decision, and both parties are correct that it will make little difference here.

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  But when a party seeks APA review, as here, "[t]he entire case on review is a question of law" rather than fact, so that it can be resolved on the administrative record at the summary judgment stage.  *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  The Court must decide whether to review questions of law using one of two standards in the APA, "arbitrary and capricious" review or "substantial evidence" review.  5 U.S.C. § 706(2)(A), (E).

The daylight between substantial-evidence and arbitrary-and-capricious review illuminates the Court's sources of facts.  Substantial-evidence review requires the agency's supportive factual evidence to be found within the annals of closed-record, formal agency proceedings.  *Phx. Herpetological Soc'y, Inc. v. Fish & Wildlife Serv.*, 998 F.3d 999, 1006 (D.C. Cir. 2021).  Arbitrary-and-capricious review, however, considers the entire administrative record, including informal proceedings.  *Id.*; *Ass'n of Data Processing Serv. Orgs. v. Bd. of Govs. of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984).  Aside from this distinction, the D.C. Circuit has called the difference between the standards of review "largely semantic" because the arbitrary-and-capricious standard is a catchall provision including decisions that would not pass substantial-evidence review.  *Id.*  To put it simply, a decision unsupported by evidence would be arbitrary.

But the distinction is irrelevant here because no facts lurk below the surface.  Mitchell's adjudication was an informal proceeding, so substantial-evidence review does not apply and there is no formal record to review.  In general, Congress has "specifie[d] by statute" that "[a]djudications to correct a military record must be supported by substantial evidence" when the Secretary has specifically "designated" the reviewing board as a "special board."  *McKinney v. Wormuth*, 5 F.4th 42, 46 n.1 (D.C. Cir. 2021); 10 U.S.C. § 1558(f)(3).[2]  When the Secretary has not so designated the board, then the adjudication is informal and arbitrary-and-capricious review applies.  *McKinney*, 5 F.4th at 46 & n.1.  There is no indication in the record or in the parties' briefing that the Secretary designated this review board as a "special" one reviewed for substantial evidence only.  Def.'s Mot. Summ. J. at 10; Pl.'s Cross Mot. Summ. J. at 19–21.  So Mitchell's adjudication was informal.  Arbitrary-and-capricious review applies.

This Court also agrees with the Government that arbitrary-and-capricious review is unusually deferential here.  The D.C. Circuit has concluded that the statute governing "[c]orrection of military records," 10 U.S.C. § 1552(a), "fairly exudes deference" to the Secretary and the Board.  *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1513 (D.C. Cir. 1989).  "The Secretary of a military department *may* correct any military record . . . when the Secretary *considers it necessary* to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1) (emphasis added).  "[T]he question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute, or other source of law, constrains agency action."  *Kreis*, 866 F.2d at 1514.  "While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's

---

[2] Mitchell argues that the Circuit precedent stating as much is wrongly decided.  Pl.'s Cross Mot. Summ. J. at 19–20. Merits aside—and the argument likely is not meritorious—*McKinney* binds this Court.

determination." *Id.* For example, the Secretary could "exercise[e] his discretion not to correct an error" for various reasons, including "mootness," redressability, lack of injury, or avoiding any follow-on injustice and institutional cost. *Id.*

So the Secretary reviewing record correction under Section 1552 "must give a reason that a court can measure" against the "arbitrary or capricious" standard, but "[p]erhaps only the most egregious decisions may be prevented under such a deferential standard of review." *Id.* at 1516. The Court applies that standard of review to the Corrections Board's decision because it was assembled under Section 1552, no matter which Military Personnel Manual provisions Mitchell violated. *See* Pl.'s Cross. Mot. Summ. J. at 2 (discussing Mitchell's violations of the Military Personnel Manual provisions 1611-020(3)(b) and (c) separately as if arbitrary-and-capricious review applied to the former and substantial-evidence review applied to the latter).

### III.

Now that the Court has decided how to review, it must determine what to review. Mitchell seeks an order to the Navy to promote him to Lieutenant Commander, retroactively effective to February 1, 2022. Compl. at 25. The parties argue about whether any aspect of Mitchell's promotion is justiciable.

Justiciability is distinct from subject matter jurisdiction. *Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009). The justiciability inquiry turns on the "inappropriateness of the subject matter for judicial consideration." *Baker v. Carr*, 369 U.S. 186, 198 (1962). Courts consider whether the "duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right can be judicially molded." *Id.*

Mitchell and the Secretary agree, at least, that the promotion decision itself is not justiciable because it is committed to agency discretion. Def.'s Mot. Summ. J. at 10–11; Pl.'s

Cross Mot. Summ. J. at 24–25.  The Court concurs.  *Kreis*, 866 F.3d at 1511; *cf.* 10 U.S.C. § 628(b)(1) (entrusting the Secretary with determining whether promotion selection was "unfair").  But Mitchell maintains that the Navy's procedural error in delaying his promotion is reviewable even if the decision itself is not.  The D.C. Circuit has "emphasize[d]" when reviewing military Boards of Correction that it "attempt[ed] to identify whether the decision making process was deficient, not whether [the] decision was correct."  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995) (cleaned up).  The statutory timeline violation falls into the procedural side of the Secretary's decision because it governs only how long the Secretary may take to make the decision, not what that ultimate decision is.

The Navy would collapse these questions of substance and procedure because the procedural delay was not the reason for his promotion removal; his lack of qualifications merited removal.  Def.'s Reply to Cross Mot. at 6–7.  But the removal's motivation is irrelevant to the statutory violation.  10 U.S.C. § 624(d)(5).  Indeed, the statute suggests that this 18-month outer limit applies to the entire subsection, including the provision allowing delay for reviewing "adverse information," as the Secretary was doing here.  *Id.* ("An appointment of an officer may not be delayed *under this subsection* . . . more than 18 months . . . ."); *id.* § 624(d)(1)(E) (allowing delay for reviewing "substantiated adverse information").  The Court cannot use the Secretary's discretion on the merits to ignore the statutory deadline separate from the merits.

So, standing alone, is the statutory violation itself justiciable?  Recall that the answer turns on whether the "duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right can be judicially molded."  *Baker*, 369 U.S. at 198.  The parties agree that there was a statutory breach.  But a violation of 10 U.S.C. § 624(d) is

not justiciable because the Court cannot judicially mold relief. The "duty" question is more complicated and, ultimately, unhelpful for Mitchell.

To begin, the Court agrees with the parties that the Navy overly delayed his promotion beyond 18 months in violation of 10 U.S.C. § 624(d)(5). This was the breach. The Secretary placed Mitchell's name on the promotion list in late 2019, and the Senate confirmed his position on November 25th of that year. AR 0182–83. Nearly 21 months later, the Navy removed his name from the promotion list in April 2022. AR 0012. The Corrections Board reviewing Mitchell's case agreed with him that the "overall period of delay exceeded" the time permitted by internal Navy regulations, which mirror 10 U.S.C. § 624. AR 0015–16.

Mitchell's momentary success founders on the other two prongs of the test. First, duty. The best version of his argument is that because Section 624 promotes officers automatically by process of law when the 18-month delay period expires, the Secretary had a duty to promote him that this Court can enforce. Pl.'s Cross Mot. at 25. But this interpretation fails to honor the statute's text and raises significant constitutional concerns.

For starters, the statute read holistically does not make promotion automatic. Subsection (a) states that "[e]xcept as provided in subsection (d) [authorizing delay for certain reasons], officers on a promotion list for a competitive category shall be promoted to the next higher grade *when* additional officers in that grade and competitive category *are needed*." 10 U.S.C. § 624(a)(2). So the statutory default is promotion on an as needed rather than an automatic basis. Subsection (c) elaborates. And "[a]ppointments under this section shall be made by the President, by and with the advice and consent of the Senate . . . ." 10 U.S.C. § 624(c). Putting these two subsections together, the President appoints officers as "needed" from the promotion list, where they were placed with the "advice and consent of the Senate."

So how does the delay provision fit?  When an officer's promotion is delayed, he is funneled away from the usual (a)(2), "as needed" promotion timeline into subsection (d), as Mitchell was under (d)(1)(e) while the Secretary reviewed "substantiated adverse information." Expiring the 18-month delay in section (d) could just return the officer to section (a) where he awaits the President's "as needed," discretionary appointment.  Section (a), after all, excepts the delays enumerated in section (d), and neither section indicates what happens upon their expiration.

Adopting this reading comports better with the Constitution than Mitchell's interpretation.  *Marbury v. Madison* explains the process when the President appoints officers "by and with the Advice and Consent of the Senate."  U.S. Const. art. II, § 2, cl. 2; 5 U.S. (1 Cranch) 137, 155–56 (1803); 10 U.S.C. § 624(c) (requiring Navy officers to be appointed "by and with the advice and consent of the Senate").  Senate-confirmed officers must be (1) nominated by the President, (2) confirmed by the Senate, and then (3) appointed by the President.  *Marbury,* 5 U.S. (1 Cranch) at 155-56.

Mitchell effectively argues that after an officer has been nominated by the President— here, placed on the promotion list—and confirmed by the Senate, then Section 624 automatically appoints the officer after 18 months.  Not so.  The Supreme Court has called the presidential "appointment" a "voluntary act."  *Id.* at 155.  A congressionally mandated act is not a voluntary presidential act.  And equating the two would undermine the "livelier sense of duty and [] more exact regard to reputation" that the Founders envisioned when vesting the Appointment Power in the President.  The Federalist No. 76 (Alexander Hamilton) (Harold C. Syrett ed., 1962).

The Federal Circuit has twice reached the same conclusion when rejecting a nearly identical argument about 10 U.S.C. § 624.  *Dysart v. United States*, 369 F.3d 1303, 1311–12

(Fed. Cir. 2004); *Lewis v. United States*, 458 F.3d 1372, 1378–79 (Fed. Cir. 2006).  In *Dysart*, a Naval officer argued that the Secretary had improperly delayed his promotion beyond the proper subsection (d) period.  *Dysart*, 369 F.3d at 1310–11.  The Federal Circuit looked toward the *Marbury* tripartite framework, an early Attorney General opinion, and the statute's subsection (c) requiring that "appointments" be made "by the President" to conclude that Presidential "nomination is not an appointment."  *Id.* at 1311.  In other words, the President placing the officer on the promotion list does not render him eligible for automatic appointment.  The Federal Circuit declared automatic appointments likely unconstitutional.  *Id.* at 1314.  Congress can omit the Senate's role for inferior officers, *see* U.S. Const. art. II, § 2, cl. 2, a step it has taken with officers below the rank of Lieutenant Commander, 10 U.S.C. § 624(c).  But for any officer of the United States, inferior or otherwise, final appointment authority lies with the President or his designee.  *Dysart*, 369 F.3d at 1314–15.  The Federal Circuit construed § 624 consistently with the constitutional appointment process: "The current statutory language itself does not clearly compel the President to appoint military officers."  *Id.* at 1316.

The military's reasoning echoes this logic.  The Corrections Board concluded that "[t]he constitutional appointment process requires an appointment to be tendered to the officer to be effective, and that requirement was not fulfilled in this case because the [Secretary] never determined [Mitchell] to be mentally, physically, morally, or professionally qualified for the promotion after it was delayed."  AR 0016.  The Secretary placed Mitchell on the promotion list, he was confirmed by the Senate, and then he never received the final, voluntary appointment.  AR 0052, 0182–83.  The facts follow the constitutional process.  Automatic appointment would upend the constitutional, statutory, and internal military standards that apply.

This Court concludes that the only "duty" the military had was to funnel Mitchell back into the promotion list where he could be elevated "when" he was "needed." 10 U.S.C. § 624(a)(2). That does little for his desired result. Mitchell's alternative reading, which fixates on § 624(d)'s timeframe, ignores the important preceding text in subsections (a) and (c), flouts the Federal Circuit's considered statutory construction, and upends the Constitution's appointment process.

Finally, Mitchell asks for a remedy that cannot "be judicially molded." His complaint prays for a judicial order to the Corrections Board to "promote LT Mitchell to Lieutenant Commander, effective as of February 1, 2022." Compl. at 25. Mitchell requests retroactive promotion.

As both parties agree, the promotion decision itself is not justiciable. Def.'s Mot. Summ. J. at 10–12; Pl.'s Cross Mot. Summ. J. at 24–25. Retroactive promotion is the remedial version of the promotion because it assumes the truth of the matter asserted—that a promotion was merited. The D.C. Circuit also has been clear that a "request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions." *Kreis*, 866 F.2d at 1511.

The Circuit previously has reinstated military officers to active duty when the board evaluating their promotions was improperly constituted under the governing statutes. *Dilley v. Alexander*, 603 F.2d 914, 924 (D.C. Cir. 1979), *decision clarified*, 627 F.2d 407 (D.C. Cir. 1980). But the Circuit did not retroactively promote the officers; instead, it reinstalled them to active duty "to be considered again by two promotion selection boards constituted in accordance with applicable statutes and regulations." *Id.* at 926. That remedial move avoids the Appointments Clause concern here. Faced more squarely with a request for retroactive

14

promotion, this Court will hew to both *Dilley* and *Kreis* in declining to appoint Mitchell retroactively.

## IV.

Mitchell also raises a more modest and constitutionally permissible request. He asks the Court to find that the Corrections Board was arbitrary or capricious when it declined to correct his record of detachment for cause based on (1) an incident of "gross negligence" and (2) a history of substandard performance. Pl.'s Cross Mot. Summ. J. at 16–23. These other claims "require [this Court] merely to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action with respect to appellant's record." *Kreis*, 866 F.2d at 1511. "Adjudication of these claims requires [this Court] to determine only whether the Secretary's decision-making process was deficient, not whether his decision was correct." *Id.* On remand, "[t]he Secretary would remain free" to "reaffirm his original determination to deny appellant further relief." *Id.* at 1512.

Recall that the Court must apply an unusually deferential arbitrary-or-capricious standard because the governing statute "fairly exudes deference" to the Secretary and the Board. *See supra* Section II. The Secretary "*may* correct any military record" when he "*considers it necessary* to correct an error." 10 U.S.C. § 1552(a)(1). "Perhaps only the most egregious decisions may be prevented under such a deferential standard of review." *Kreis*, 866 F.2d at 1516.

## A.

First consider Mitchell's "gross negligence" record-correction claim. He contends that the Corrections Board was arbitrary or capricious when it failed to correct his record showing

detachment for cause based on the December 11th incident.  Pl.'s Cross Mot. Summ. J. at 16.
The Court disagrees.

The military personnel manual allows detachment for cause based on "[s]ubstandard
performance involving one or more significant events resulting from gross negligence or
complete disregard of duty."  MILPERSMAN 1611-020(3)(b).  The parties agree that the manual
does not define "gross negligence."  Pl.'s Cross Mot. Summ. J. at 16; Def.'s Opp., ECF No. 18 at
2–3.  Mitchell argues that the military has effectively defined "gross negligence" and that it has
not treated his case in accordance with its own standards.  Def.'s Opp. at 17.  So, he continues,
this Court should defer to the agency's interpretation of its own regulation under *Auer v.
Robbins*, 519 U.S. 452 (1997).  And evaluating his case under the agency's own interpretation,
he says, requires correcting his record.

Mitchell's argument fails at the outset:  The military's definitions of "gross negligence"
would counsel the same decision that the Navy made here.  So the Court need not determine
whether to defer to any military definitions that might apply.

The Court found only one instance when the military adopted a definition of "gross
negligence" under MILPERSMAN 1611-020, which Mitchell failed to raise.  *See Frank v.
United States*, 171 Fed. Cl. 392, 404 (2024).  In 2024, the Board of Corrections for the Navy
affirmed an officer's detachment for cause under MILPERSMAN 1611-020 due to gross
negligence.  *Id.*  It adopted "by analogy" the Secretary of the Navy Instruction's definition of
"substandard performance of duty" to elaborate "gross negligence" in MILPERSMAN:  the
"[i]nability of an officer to maintain adequate levels of performance or conduct as evidenced by
one or more of these reasons."  *Pol'y Governing Involuntary Separation for Cause or*

*Parenthood*, SECNAVINST 1920.6, Encl. 6(1)(a).[3]  Nine examples follow this definition in the

Secretary of the Navy Instruction Manual.  *Id.* Encl. 6(1)(a)(1)–(9).  They include "[f]ailure to

demonstrate acceptable qualities of leadership required of an officer in the member's grade,"

"[f]ailure to properly discharge duties assigned to or expected of an officer in the member's

grade," and "failure to conform to prescribed standards of dress, weight, personal appearance, or

military deportment."  *Id.* Encl. 6(1)(a)(1), (3).

Even if the Court were to consider this definition, deferring to it as Mitchell requests

would not help.  "[G]ross negligence" includes "[f]ailure to properly discharge duties assigned to

or expected of an officer in the member's grade."  Mitchell's commander described Mitchell's

conduct as "not in line with the expectations of a Naval Officer of any rank, but especially a

senior Department Head about to be promoted to Lieutenant Commander." AR 0239–42.

Further, if "failure to conform to prescribed standards of dress" qualifies, then it is hard to

imagine that Mitchell's unapproved absence does not.  In any event, the Navy's decision hardly

rises to the "most egregious decisions" that the statute's standard of review allows courts to

correct.  *Kreis*, 866 F.2d at 1516.

Mitchell otherwise makes two attempts to define gross negligence, but neither succeeds.

First, he invokes a District of Columbia case interpreting D.C. tort law as a definition for "gross

negligence."  *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997).  But this case defines

"gross negligence" under the D.C. Code Employee Non-Liability Act, specifically "in the

context of emergency vehicle operation."  *Id.*  It is neither binding nor relevant here.

Next, he asserts that the military has effectively defined "gross negligence" through

adjudication of other military detachments.  Def.'s Opp. at 17.  Among the few federal cases

---

[3] https://perma.cc/3K8F-4BCV.

citing MILPERSMAN 1611, one shows that the military detached an officer for cause for the offense of drinking alcohol after work hours with his colleagues in violation of an order that prohibited it for servicemembers on his assignment. *See Debor v. United States*, 2023 WL 4417362, at *1, *5 (Fed. Cl. July 7, 2023). Even if a singular case could establish a standard by adjudication, it almost certainly would not exclude Mitchell's conduct here. Mitchell's cited cases, Pl.'s Cross Mot. Summ. J. at 17, admittedly display worse facts leading to detachment for cause. *See, e.g.*, *Powe v. Sec'y, Dep't of Navy*, 1994 WL 445695 *1 (4th Cir. Aug. 18, 1994) (detaching an officer for cause after running two ships aground in seven months). But none define "gross negligence" under MILPERSMAN 1611-020. *See, e.g.*, *Piersall v. Winter*, 507 F. Supp. 2d 23, 27–28 (D.D.C. 2007).

In sum, Mitchell has not shown that the military has adopted a gross-negligence standard under MILPERSMAN that would exclude his conduct. Only if the agency had adopted an interpretation that might be dispositive here would the Court need to analyze whether it merited deference.[4]

## B.

Finally, Mitchell requests record correction regarding his substandard performance of duty over an extended period. Pl.'s Cross. Mot. Summ. J. at 21–22. He claims that the Board's decision was arbitrary and capricious because (1) his performance was not substandard and (2) any allegedly substandard performance was very short-lived so that it did not qualify for MILPERSMAN's "extended period" language. MILPERSMAN § 1611-020(3)(c). Again, this Court may correct "only the most egregious" of errors. *Kreis*, 866 F.2d at 1516.

---

[4] The record suggests that the parties are litigating the wrong legal standard. The commander's letter repeatedly references "misconduct" without mentioning "gross negligence," which could invoke MILPERSMAN 1611-020(3)(a) instead of (3)(b). AR 0167, 0248. But because neither party raises the issue, the Court assumes they are correct. *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).

Reviewing Mitchell's record raises questions, but none that rise to the level of a "most egregious" error. His superiors issued a Letter of Instruction on September 9, 2019, intended to help him improve after "failing to effectively communicate and an inability to complete routine tasks [within] prescribed timelines." AR 0109. The reprimand stemmed from a pattern, not an incident, of poor performance. Def.'s Mot. Summ. J. at 14. His skipper details four types of unsatisfactory performance stretching from November 2018 through January 2020:

(1) submitting weekly reports that were "routinely late and substandard";

(2) "lax administrative oversight" causing his superiors to "personally oversee and supervise the work of those under him";

(3) neglecting to develop action plans for critical events and training; and

(4) lacking required communication with other ships and his officers when preparing for a combat trial. AR 0211–12.[5]

Then, in October 2019, a commanding officer again orally counseled Mitchell for "inappropriate behavior toward subordinates," "failure to meet standards as a watch stander," and "failure to accomplish assigned tasks." AR 0212–13.

To contradict these negative narratives, Mitchell proffers his "positive" fitness report for the period between February through November 2019, the time during which the USS *Howard* skipper claimed that he was performing poorly. Pl.'s Cross Mot. Summ. J. at 22; AR 0108–09. But the report is less rosy than he suggests. Pl.'s Cross Mot. Summ. J. at 22. He lauds scoring "at or above Naval standards in six out of seven possible categories." *Id.* In the seventh category, Mission Accomplishment and Initiative, Mitchell scored below standards in a ranking

---

[5] Mitchell contends that it helps his case to count the *Howard* commander's comments in the detachment letter as the same piece of evidence as the Letter of Instruction because the two writings detail the same events. Pl.'s Cross. Mot. Summ. J. at 21–22. But this just collapses two pieces of evidence rather than rendering one irrelevant or controverted. It does not move the needle for him.

called "progressing," which was between "below standards" and "meets standards."  AR 0108.

He merely "met standards" in five of other categories.  *Id.*  For the sixth, he was in a ranking

called "above standards," between "meets standards" and "greatly exceeds standards."  *Id.*  The

rankings are hardly "gush[ing]."  Pl.'s Cross Mot. Summ. J. at 22.  Finally, Mitchell's emphasis

on the overall "promotable" is misplaced.  *Id.*  There are five overall rankings in ascending order:

"Significant Problems," "Progressing," "Promotable," "Must Promote," and "Early Promote."

AR 0109.  "Promotable" is no glowing endorsement.  While the overall fitness evaluation was

not dismal, it cannot do the work that Mitchell needs to undermine the *Howard* commander's

assessment.

In one final effort, Mitchell asserts that any misconduct detailed in the record only

occurred between September 9, 2019, when he received the Letter of Instruction, and the

December 11th incident.  Pl.'s Cross Mot. Summ. J. at 23.  This "short, three-month timeframe"

could not possibly match the "extended period of time" language in MILPERSMAN 1611-

020(3)(c), he argues.  *Id.*  But as the record evidence shows, the misconduct occurred over a

longer period.  Mitchell has never combated his commander's evidence; he has only minimized

its importance.  *Id.* (dismissing supervisor feedback that he received the month after the Letter of

Instruction as "minor verbal counseling").  More, the MILPERSMAN explicitly states that the

"extended period of time" in Section 1611-020(3)(c) has "no fixed time period" to qualify as a

basis for detachment for cause.  Rather, the period "is dictated by the facts and circumstances of

the particular case and the efforts expended by the command to assist the officer in overcoming

perceived performance deficiencies."  MILPERSMAN 1611-020(3)(c).  For these reasons,

Mitchell's appeals to cases in which officers misbehaved for seven or nine months do not rescue

his cause.  Pl.'s Reply at 10; *see, e.g.*, *Powe*, 1994 WL 445695, at *1.  Mitchell has not proven

the Board erred factually or legally, much less egregiously so, when determining that he had

engaged in a "substandard performance of duty over an extended period of time."[6]

## V.

For these reasons, the Defendant's Motion for Summary Judgment will be granted.  The

Plaintiff's Cross-Motion for Summary Judgment will be denied.  A separate Order will issue.

Dated: November 26, 2024

_____
TREVOR N. McFADDEN
United States District Judge

---

[6] If Mitchell argues that the Correction Board found that he did not exhibit substandard performance of duty, he misreads the record.  Pl.'s Cross Mot. Summ. J. at 10.  That page of the Board's decision recites procedural history showing that a Naval Board of Inquiry determined that "substandard performance of duty" should not be a "basis for involuntary separation," by a preponderance of the evidence.  AR 0010.  Deciding whether to expel a servicemember from the Navy against his will is different from removing him from a certain assignment for poor performance.  *Compare* MILPERSMAN 1611-020(3)(c) (discussing the policy governing detachment from a certain duty assignment for cause) *with* SECNAVINST 1920.6D, Encl. 7 (showing the policy governing involuntary separation from the Navy overall for cause).